UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

ANTHONY MARTIN,                          )
                                         )
                    Plaintiff,           )
                                         )
          v.                             )          No. 2:23-cv-00384-JMS-MG
                                         )
ACKERS Officer, et al.,                  )
                                         )
                    Defendants.          )


**Order Screening Complaint and Directing Further Proceedings**

Anthony Martin alleges that numerous correctional and medical staff members at Wabash Valley Correctional Facility (WVCF) have violated his civil rights. Because the plaintiff is a "prisoner," this Court has an obligation to screen the complaint before service on the defendants. 28 U.S.C. § 1915A(a), (c).

**I. Screening Standard**

When screening a complaint, the Court must dismiss any portion that is frivolous or malicious, fails to state a claim for relief, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915A(b). To determine whether the complaint states a claim, the Court applies the same standard as when addressing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *See Schillinger v. Kiley*, 954 F.3d 990, 993 (7th Cir. 2020). Under that standard, a complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court construes *pro se* complaints liberally and holds them to a "less stringent

standard than formal pleadings drafted by lawyers." *Cesal v. Moats*, 851 F.3d 714, 720 (7th Cir. 2017).

## II. The Complaint

Mr. Martin asserts claims against 24 defendants under nine legal theories. His allegations are not all related to one another such that his claims may proceed in the same action.

### A.   Harassment and Inhumane Conditions

Sometime before October 2022, Mr. Martin came to believe that a large group of correctional officers at WVCF formed or belonged to a white supremacist group. He asked the "higher administration" about this and accused these officers of giving "favoritism" to white inmates. Dkt. 2 at ¶ 6. It is not clear when, how, or to whom he posed these allegations.

More broadly, the complaint supports an inference that Mr. Martin was a prolific grievance filer.

Beginning in October 2022, and continuing through the filing of this complaint, a group of officers began a course of harassment in retaliation for Mr. Martin's grievances and his inquiries into the white supremacist group. This group of officers included Officer Ackers, Officer Eric Hill, Lieutenant Holcomb, Sergeant Ashda, Sergeant Manley, Officer Helderman, Officer Might, Officer Shepard, and Officer Downing. Their acts of harassment included ransacking Mr. Martin's cell and damaging or stealing his property; repeatedly spitting in or otherwise contaminating his food or refusing to replace contaminated meal trays, depriving him of water in his cell and while at the nurse's station, and withholding food, recreation time, and showers.

These allegations support plausible First and Eighth Amendment claims under 42 U.S.C. § 1983.

**B.    Denial of Medical Care**

On March 26, 2023, Mr. Martin passed out in his cell, fell, and hit his head on the toilet. Nurse Maddy and Officer Peach saw him fall but did not provide or call for medical attention. Officers Hill, Ackers, Shepard, and Helderman and Sergeants Ashda and Manley walked past while Mr. Martin lay on the floor bleeding, but they offered no assistance.

These allegations support plausible Eighth Amendment claims under 42 U.S.C. § 1983.

**C.    Denial of Grievances and Requests for Action**

In mid-March 2023, Mr. Martin contacted Warden Vanihel, Major Russell, Lieutenant Holcomb, Lieutenant Yader, Captain Wadawahn, Sergeant Ashda, Sergeant Manley, Sergeant Ivy, and Lieutenant Coakley. He asked them to "remove" the officers who had been harassing him or otherwise intervene on his behalf. Dkt. 2 at ¶¶ 15, 18. They did not do so.

On March 24, 2023, Mr. Martin reported to Lieutenant Holcomb, Sergeant Ashda, and mental health professional Sarah Clarke that officers tampered with his meal tray, but they did not do anything about it.

On June 26, 2023, Mr. Martin reported to Sergeant Ivy that officers were denying him his recreation time and shower. Sergeant Ivy took no action.

On July 6, 2023, Mr. Martin reported to Officer Butcher that officers were denying him his recreation time and shower. Officer Butcher offered no assistance, refused to call a case manager, and told Mr. Martin to "shut the fuck up" because "everyone was tired of [him] complaining." *id.* at ¶¶ 45–46. Mr. Martin later filed a grievance.

These allegations do not support plausible claims. Simply put, the proposition that "everyone who knows about a prisoner's problem must pay damages . . . can't be right." *Burks v. Raemisch*, 555 F.3d 592, 595 (7th Cir. 2009).

The allegations noted above support an inference that Mr. Martin reported officers' misconduct to anyone he could track down, without regard for whether he was presenting his complaints to the proper officials or through the proper means. Mr. Martin makes clear that he was still able to present grievances through the formal grievance process, so this is not a case where his requests simply fell "on 'deaf ears.'" *Perez v. Fenoglio*, 792 F.3d 768, 782 (7th Cir. 2015) (quoting *Dixon v. Godinez*, 114 F.3d 640, 645 (7th Cir. 1997). Allegations that he asked officials to remove officers from his unit or reported isolated incidents of tampering with meal trays or denying showers and recreation do not raise a reasonable inference that any defendant was "alerted to an excessive risk to inmate safety or health." *Id.* And Mr. Martin's allegations that he requested help from a defendant does not mean that help was within "the authority of his or her office." *Id.* In short, Mr. Martin's allegations that he sought assistance from officers who did not provide it does not state a constitutional claim.

## D. Mental Health Claims

On March 15, 2023, Mr. Martin told Nurse Jennifer and Ms. Clarke that he was experiencing "a mental health break down" because he received a contaminated meal tray. Dkt. 2 at ¶ 17. They provided no assistance and told Mr. Martin that meal trays were not a mental health issue.

On June 26, 2023, Mr. Martin told Ms. Clarke, Mrs. Ramirez, and Mrs. Fagg that he was experiencing a mental health breakdown after he was denied recreation time and showers. They provided no assistance and told him these were not mental health issues.

These allegations do not state plausible claims for relief.

"It is well-established that prison officials and medical staff violate the Eight Amendment's prohibition on cruel and unusual punishment when they act with deliberate indifference to a

prisoner's serious medical needs." *Rasho v. Elyea*, 856 F.3d 469, 475 (7th Cir. 2017). "To determine if the Eighth Amendment has been violated in the prison medical context, we perform a two-step analysis, first examining whether a plaintiff suffered from an objectively serious medical condition, and then determining whether the individual was deliberately indifferent to that condition." *Petties v. Carter*, 836 F.3d 722, 727–28 (7th Cir. 202017).

Mr. Martin's broad assertion that he was suffering a mental health break down does not support a reasonable inference that he was suffering from an objectively serious medical or mental health condition during either incident. Allegations that he received a contaminated tray on one occasion and did not receive recreation time or a shower on another occasion do not, by themselves, support an inference that he faced an unreasonably serious risk of harm. Mr. Martin does not describe any of the symptoms he was suffering during his alleged breakdown that might support such an inference. Regardless, his allegations do not support an inference that any of these defendants *knew*—based on the minimal information provided—that Mr. Martin faced an excessive risk of harm or that their failure to act on it harmed him (beyond the fact that he did not receive a meal, recreation time, or shower). *See Wilson v. Adams*, 901 F.3d 816, 820 (7th Cir. 2018) ("An official is deliberately indifferent when he disregards a known condition that poses an excessive risk to inmate health or safety.) (internal quotation omitted).

## E.    Miscellaneous Claims and Defendants

Mr. Martin names Nurse Richard as a defendant, but he alleges only that Nurse Richard provided him medical attention when he became dangerously dehydrated during a hunger strike. These allegations do not support any claim for relief.

Mr. Martin names Centurion Medical Services—the prison's medical contractor—as a defendant and alleges that it had policies and procedures in place that should have protected him

but were "not enforced or misapplied." Dkt. 2 at ¶ 52. Although a private entity, Centurion acts under color of state law and therefore may be liable for damages under § 1983 only under the theory announced in *Monell v. Department of Social Services*, 436 U.S. 658 (1978). *Walker v. Wexford Health Sources*, 940 F.3d 954, 966 (7th Cir. 2019). "Prevailing on such a claim requires evidence that a [Centurion] policy, practice, or custom caused" the constitutional violation alleged. *Id.* Mr. Martin alleges the opposite—that the individual defendants' failure to apply Centurion policies caused a violation of his rights. As such, claims against Centurion are not viable.

Mr. Martin asserts that Warden Frank Vanihel was the "final policy maker" at WVCF and that he implemented policies and procedures that allowed his safety and health to become endangered, allowed him to be deprived of food, and be harassed and discriminated against. Dkt. 2 at ¶¶ 53–54. But "[l]iability under § 1983 is direct rather than vicarious; supervisors are responsible for their own acts but not for those of subordinates, or for failing to ensure that subordinates carry out their tasks correctly." *Horshaw v. Casper*, 910 F.3d 1027, 1029 (7th Cir. 2018). Mr. Martin's allegations against Warden Vanihel are conclusory and do not state a plausible claim for relief. He cannot raise a reasonable inference that Warden Vanihel is liable for implementing unconstitutional policies without providing some insight as to what those policies were.

Mr. Martin asserts equal protection claims under theories of racial discrimination and "class of one" discrimination. Dkt. 2 at 5. But Mr. Martin does not identify the facts that he believes supports these claims. Mr. Martin does not allege that he has been intentionally treated different from other similarly situated inmates as would be required to plead a class of one claim. *United States v. Moore*, 543 F.3d 891, 896 (7th Cir. 2008). Likewise, he does not allege that he has been intentionally treated differently from similarly situated inmates of a different race as would be

required to state a racial discrimination claim. *Alston v. City of Madison*, 853 F.3d 901, 906 (7th Cir. 2017).

Mr. Martin asserts a "conspiracy" claim, the basis of which is unclear. To the extent he asserts a claim under 42 U.S.C. § 1985(3), it is "superfluous." *Fairley v. Andrews*, 578 F.3d 518, 526 (7th Cir. 2009). "The function of § 1985(3) is to permit recovery from a private actor who has conspired with state actors" but would not be subject to suit under § 1983. *Id.* Because Mr. Martin may sue every defendant in this case under § 1983, "a § 1985(3) claim does not add anything except needless complexity." *Id.*

Finally, Mr. Martin asserts that searches of his cell violated the Fourth Amendment. But "the Fourth Amendment proscription against unreasonable searches does not apply within the confines of the prison cell." *Hudson v. Palmer*, 468 U.S. 517, 525–26 (1984).

### III. Discussion of Claims

The complaint asserts two sets of plausible claims: (1) First and Eighth Amendment claims against Officer Ackers, Officer Eric Hill, Lieutenant Holcomb, Sergeant Ashda, Sergeant Manley, Officer Helderman, Officer Might, Officer Shepard, and Officer Downing; and (2) Eighth Amendment claims against Nurse Maddy, Officers Peach, Hill, Ackers, Shepard, and Helderman, and Sergeants Ashda and Manley.

For defendants to be joined in one lawsuit, at least one claim against all of them must arise out of the same transaction or occurrence, and there must be at least one common question of law or fact that applies to each and every one of them. Fed. R. Civ. P. 20(a)(2)(B). That is not the case here. Defendants Maddy and Peach are defendants only on the claims arising from Mr. Martin's loss of consciousness and fall. Defendants Holcomb, Might, and Downing are defendants only in the claims arising from the long course of harassment and confinement under inhumane conditions.

In short, the claims do not arise from the same act or occurrence, and there is no question of law or fact that would join all the parties.

Federal Rule of Civil Procedure 21 gives the Court authority to "sever any claim against a party." "It is within the district court's broad discretion whether to sever a claim under Rule 21." *Rice v. Sunrise Express, Inc.*, 209 F.3d 1008, 1016 (7th Cir. 2000); *see also Taylor v. Brown*, 787 F.3d 851, 859 (7th Cir. 2015) ("We review a court's decision to sever claims for an abuse of discretion."). "As long as there is a discrete and separate claim, the district court may exercise its discretion and sever it." *Rice*, 209 F.3d 1008, 1016. This means only that "one claim must be capable of resolution despite the outcome of the other claim." *Gaffney v. Riverboat Servs. of Indiana*, 451 F.3d 424, 442 (7th Cir. 2006).

This action **will proceed** with First Amendment retaliation and Eighth Amendment conditions claims against Officer Ackers, Officer Eric Hill, Lieutenant Holcomb, Sergeant Ashda, Sergeant Manley, Officer Helderman, Officer Might, Officer Shepard, and Officer Downing pursuant to 42 U.S.C. § 1983. The **clerk is directed** to **terminate** all other defendants from the docket and change Defendant "Holcomd" to Defendant "Holcomb."

Pursuant to Federal Rule of Civil Procedure 21, the **clerk is directed** to open a **new civil action** consistent with the following:

1) The Plaintiff will be Anthony Martin.

2) The defendant will be Nurse Maddy, Officer Peach, Officer Eric Hill, Officer Ackers, Officer Shepard, Officer Helderman, Sergeant Ashda. and Sergeant Manley.

3) The Nature of Suit will be 555.

4) The Cause of Action will be 42:1983pr.

5) The **clerk is directed** to docket copies of the following in the new action: the complaint (dkt. [2]), motion for leave to proceed *in forma pauperis* (dkt. [3] and attachments), and this order.

6) The assignment of judicial officers will be by random draw.

All other claims are **dismissed** for the reasons discussed in Part II.

### IV. Service of Process

The **clerk is directed** pursuant to Fed. R. Civ. P. 4(c)(3) to issue process to the defendants in the manner specified by Rule 4(d). Process will consist of the complaint (dkt [2]), applicable forms (Notice of Lawsuit and Request for Waiver of Service of Summons and Waiver of Service of Summons), and this order.

The **clerk is directed** to serve the defendants, who are Indiana Department of Correction employees, electronically.

**IT IS SO ORDERED.**

Date: 10/27/2023

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

Distribution:

ANTHONY MARTIN
945288
WABASH VALLEY - CF
WABASH VALLEY CORRECTIONAL FACILITY - Inmate Mail/Parcels
Electronic Service Participant – Court Only

Electronic service to IDOC employees at WVCF:

Officer Ackers, Officer Eric Hill, Lieutenant Holcomb, Sergeant Ashda, Sergeant Manley, Officer Helderman, Officer Might, Officer Shepard, and Officer Downing